UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJIED ALZID,

       Plaintiff,

                                  CASE NO. 18-13089

v.                              HON. DENISE PAGE HOOD

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

              Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#31]
and DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [#32]**

## I.    INTRODUCTION

On October 2, 2018, Plaintiff filed a Complaint alleging that Defendant

discriminated and retaliated against him on the basis of his religion and national

origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.* ("Title VII"), and the Michigan Elliott-Larsen Civil Rights Act, M.C.L.

§37.2201(a) *et seq.* ("ELCRA").  On November 12, 2019, Defendant filed a Motion

for Summary Judgment, ECF No. 31, and Plaintiff filed a Motion for Partial Summary

Judgment. ECF No. 32.

Defendant's Motion for Summary Judgment seeks dismissal of all six of Plaintiff's claims: (a) religious discrimination in violation of Title VII (Count I); (b) national origin discrimination in violation of Title VII (Count II); (c) retaliation in violation of Title VII (Count III); (d) religious discrimination in violation of ELCRA (Count IV); (e) national origin discrimination in violation of ELCRA (Count V); and retaliation in violation of ELCRA (Count VI) (mistitled "Count VII – Retaliation in Violation of Title VII").  Plaintiff's Motion for Partial Summary Judgment seeks a finding as a matter of law that Defendant is liable on Plaintiff's retaliation claims at Counts III and VI of his Complaint.  The Motions have been fully briefed. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

## II.   STATEMENT OF FACTS

Plaintiff began working for Defendant as a Customer Service Representative on March 29, 2016, and he provided Defendant with his passport to confirm that he was a U.S. Citizen at the time of hire.  At that time, Plaintiff was a member of the Islamic faith.  In or before April 2017, Plaintiff became a member of the Moorish Science Temple of America ("MSTA").  According to an exhibit submitted by Plaintiff, MSTA is "an American national and religious organization founded by Noble Drew Ali" in 1913, and the MSTA is based "on the premise that African

Americans are descendants of the Moabites and thus are 'Moorish' . . . by nationality, and Islamic by faith." ECF No. 32, Ex. B; *see also* ECF No. 32, Ex. A at 60 (Plaintiff's deposition testimony was that MSTA "teaches you that you're Morrish [sic] by birth, Islamic by faith."). Plaintiff states that Prophet Ali taught:

> [A]ll blacks were of Moorish origins but had their Muslim identity taken away from them through slavery and racial segregation. He advocated that they should "return" to the Islam of their Moorish forefathers, redeeming themselves from racial oppression by reclaiming their historical spiritual heritage. He also encouraged use of the term "Moor" rather than "black" in self-identification.

ECF No. 32, Ex. D.  According to Plaintiff, Prophet Ali declared that the congregation considers themselves to be "Moorish Americans." ECF No. 32, Ex. E at 2-3. To join MSTA, believers simply had to proclaim their Moorish nationality and were given nationality cards. ECF No. 32, Ex. A at 44 ("to . . . join[] the Morrish [sic] Science Temple of America[,]" you . . . just declare that you are" Moorish).

Plaintiff states that, in April and May 2017, he "followed the Moorish faith and believed he was a Moorish sovereign citizen, 'sort of like the Indians have their own sovereign nation, but they're still Americans at the same time.'" ECF No. 32, PgID 944 and Ex. A at 249-50. Plaintiff represents that MSTA members share a sincerely held belief that they are not U.S. citizens because they are Moorish Nationals, and therefore not subject to U.S. taxation. ECF No. 32, Ex. F at 3.

Plaintiff states that MSTA religious leaders advised him to submit

3

documentation to his employer, and they directed Plaintiff to a website to obtain the

forms and instructed Plaintiff how to fill out the forms. ECF No. 32, Ex. A at 63, 74,

79, 140. In April 2017, Plaintiff contacted his supervisor, Maria Bodiford, explained

to her that he recently converted to MSTA and that he wanted to withdraw the use of

his Social Security number because he is not subject to U.S. taxes. *Id.* at 63.  Plaintiff

testified at his deposition that he told Bodiford on April 25, 2017 that he had received

the documentation from his religious leaders, though Bodiford disputes that Plaintiff

did so. ECF No. 32, Ex. G at 48-50.  Bodiford directed Plaintiff to Vera Grigorian,

Defendant's Director of Employee Labor Relations. *Id.* at 75.

On April 25, 2017, Plaintiff emailed documentation to Grigorian, requesting

from her that his Social Security number be withdrawn for income tax purposes and

that Defendant stop withholding his taxes. ECF No. 32, Ex. H (the subject of the email

was "Withdraw the use of my soc security number"). The documentation Plaintiff

provided to Grigorian included a W-4T form and another attachment that advised that

the W-4T form is not an IRS form, and Plaintiff stated:

> The affiant is neither a "citizen" nor a "resident" within the meaning of
> the Internal Revenue Code, because of his/her declared status as a
> "Moorish American National", Continental United States.

*Id.* at 4. The documentation included a statement that Plaintiff was electing to

withdraw the use of his Social Security number when the employer reports wages and

taxes. *Id*. at 5.

On April 26, 2017, Grigorian forwarded the request to Mary Driessche, Employee Labor Relations Manager, and Patricia Snyder, Grigorian's superior, labeling the request as "Bizarre………" ECF No. 32, Ex. J. Grigorian also forwarded the request to Roy Nesler, Director of Employee Services. ECF No. 32, Ex. K; Ex. L. On the same day, Nesler asked Plaintiff if Plaintiff was claiming that he was exempt from federal withholding taxes, and Plaintiff answered in the affirmative. ECF No. 32, Ex. M. *See also* ECF No. 32, Exs. N and O. Nesler advised Plaintiff: "If you are claiming exemption from federal tax withholding, you need to login to Self Service, select W-4 Tax information, Select Claim Exemption, and Submit." ECF No. 34, Ex. M and Ex. Q (May 13, 2017 correspondence).

On May 25, 2017, Nesler followed up with Plaintiff and forwarded Driessche's email to Plaintiff concerning the instructions to claim the tax exemption. ECF No. 32, Ex. R. On May 25, 2017, Plaintiff claimed the exemption on the HR Self Service form. ECF No. 32, Ex. S. The same day that Plaintiff claimed the tax exemption, Driessche emailed Plaintiff, stating she "would like to ask some questions about [his] request." ECF No. 32 Ex. R. *See also* ECF No. 32, Ex. T at 56 ("And that's when I said I wanted to reach out to him was that same day. It was after that that he made the change. But my questions were more along the lines of is this just for tax purpose?

What are you actually asking us to do?"). Plaintiff asked Driessche to set forth her questions in writing so that he could maintain a record of their interactions, but Driessche refused to do so. ECF No. 32, Ex. R; *see also* ECF No. 32, Ex. T at 59.

On May 30, 2017, Driessche conducted an "investigative meeting" to "clarify Plaintiff's demand that [Defendant] discontinue its tax withholdings and Plaintiff's claim that he was a 'non-citizen' of the United States" and to ask Plaintiff about the documents he submitted. ECF No. 4 at ¶ 26. *See also* ECF No. 32, Ex. T at 62, 72, 75. Driessche prepared questions before the meeting and wrote down her version of Plaintiff's answers in her investigative notes. ECF No. 32, Ex. U. *See also* ECF No. 32 at 86.

At the beginning of the investigative meeting, Driessche advised Plaintiff to testify truthfully and that false or misleading information would be grounds for termination. ECF No. 32, Ex. T at 89. Driessche did not want Plaintiff to guess if he did not know the answer to the question and indicated that if Plaintiff did not know the answer to a question, the appropriate answer would be to indicate the same. *Id.* Driessche asked Plaintiff a number of questions, including: "what does nonresident alien mean to you?" ECF No. 32, Ex. U at 1. Plaintiff responded: "I don't know what it means. I'm not sure because I'm not a tax expert." *Id.*; *see also* ECF No. 32, Ex. A at 153-54. Driessche did not believe Plaintiff was lying when he answered this

question. *Id*. at 96-97. Driessche also asked Plaintiff to explain the following sentence found in the document he submitted: "[T]he affiant is neither a 'citizen' nor a 'resident'…declared status as 'Moorish American National'…" ECF No. 32, Ex. U at 1. Plaintiff replied: "I can't explain. I don't understand the legal jargon." *Id*. Plaintiff generally made it clear that he did not know the answer to Driessche's legal questions concerning his citizenship status. ECF No. 32, Ex. U.

According to Driessche's investigative notes, Driessche then asked Plaintiff where he obtained the documentation he submitted in connection with his request, and Plaintiff advised that he "got it from the Moorish temple." *Id*. at 2. Driessche testified that she understood that "the word temple is basically a place of worship," and that Plaintiff "specifically advised [her] that he received the documents from this place of worship." ECF No. 32, Ex. T at 122, 126 ("So I will say I assumed the Moorish Temple was his place of worship, but I don't know that for a fact."); Ex. G at 45-46 (acknowledging that Moorish Temple sounds like a religion because of the word temple.). Driessche testified she had no reason to doubt the truthfulness of Plaintiff's answer. ECF No. 32, Ex. T at 122. Driessche then asked Plaintiff: "How has your citizenship status changed since you provided these documents (reflecting his U.S. citizenship) at hire?" ECF No. 32, Ex. U at 3. Plaintiff stated: "I'm Moorish American. I don't know if that means I'm a citizen. I don't understand the jargon. I

was told to fill out the forms and give them to BCBSM." *Id*.

Driessche's final question to Plaintiff was if he had anything else he would like to add, and Plaintiff replied: "I want a copy of the forms. I'm not sure of the terms and how to answer the questions. I know I'm a Moorish American, but I don't know what that entails. I'm not an expert. The information is beyond my education." *Id*. On May 30, 2017, following the investigative meeting, Plaintiff emailed Driessche, as follows:

> Please send me a copy of the questions you asked me today. Please also indicate that I could Not answer any of your questions. I prefer this hard copy for my records. I want to be sure that we are all on the same page. If you need any questions answered about the Moorish American Then I can direct you to our Place o[f] worship.[] I am not versed enough to answer any of the questions you asked me of today. Thank you

ECF No. 32, Ex. V; ECF No. 4 at ¶ 41 ("BCBSM admits that Plaintiff directed BCBSM to his place of worship for additional information."). Defendant did not reach out to Plaintiff's place of worship. ECF No. 32, Ex. W (Answer to Interrogatory 9). Defendant admits that "Plaintiff expressed his view that he was exempt from paying federal taxes because of his membership in the Moorish American Church." ECF No. 32, Ex. X (Answer to Interrogatory No. 8).

Following the investigative interview, Driessche advised Grigorian that Plaintiff informed her that Driessche could speak to Plaintiff's place of worship if she needed more information. ECF No. 32, Ex. T at 164; ECF No. 32, Ex. I at 72-73. Driessche and Grigorian decided to terminate Plaintiff based on this incident. ECF No. 32, Ex.

I at 89; Ex. T at 177.  Defendant's June 2, 2017 termination report on Plaintiff states that Plaintiff was terminated for "providing conflicting and false information to the company regarding his U.S. citizenship status." ECF No. 32, Ex. Y.  Defendant notes that Plaintiff indicated he was a U.S. citizen at hire, but provided documentation in April and May 2017 indicating that he is exempt from paying taxes because of his alleged status as a "Moorish American National." *Id*.  Driessche states that when Plaintiff submitted the documents on May 25, 2017, they were not false or misleading at that point, but when she asked Plaintiff to explain the documents and he could not explain it, the information became either false or misleading. ECF No. 32, Ex. T at 173. Driessche never doubted whether Plaintiff was a U.S. citizen. *Id*. at 36.

The termination notice also provides that, during the investigative meeting, Plaintiff "was uncooperative and declined to answer all questions stating that he did not understand the 'legal jargon' in the documents and typed statements that he had provided to the Company…" during the investigative meeting. ECF No. 32, Ex. Y. Driessche subsequently stated that she did not presume that Plaintiff was trying to be uncooperative. ECF No. 32, Ex. T at 91. Driessche also testified that Plaintiff was not terminated for being uncooperative. *Id*. at 147.

## III.    APPLICABLE LAW

## A.    Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*,

10

477 U.S. at 248.

**B.     Title VII and ELCRA Standards re: Religion and National Origin**

"Both Title VII and the Elliot-Larson Civil Rights Act . . . prohibit an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment based on that individual's religion [or national origin]." *Shabazz v. Safe Horizons*, 2011 U.S. Dist. LEXIS 103774, at **17-18 (E.D. Mich. September 13, 2011) (citing 42 U.S.C §2000e-2(a)(1) and Mich. Comp. Laws §37.2202(1)(a)). "To assert a successful claim of religious [or national origin] discrimination under Title VII [and ELCRA], a plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, present a prima facie case of indirect discrimination[.]" *Tepper v. Potter*, 505 F.3d 508, 12-13 (6th Cir. 2007) (citing *McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973)).

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper*, 505 F.3d at 15 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (remaining citations omitted)). Direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id*. (emphasis added).

11

For indirect evidence of discrimination, "[c]ourts use the same burden shifting analysis the United States Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id*. at *18 (citing *Curry v. SBC Commcations, Inc.,* 559 F.Supp.2d 805, 824 (E.D. Mich. 2009); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001)). To demonstrate a prima facie case of indirect discrimination, a plaintiff must show:

> (1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees.

*Tepper*, 505 F.3d at 13-14. "If the plaintiff is able to present a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Shabazz*, 2011 U.S. Dist. LEXIS 103774, at *14. Upon demonstration by the defendant of a legitimate, nondiscriminatory reason for the adverse employment action, "the burden shifts back to the plaintiff who must show that the defendant's proffered reason is a pretext for discrimination." *Id*.

## C.    Retaliation

Under Title VII, a plaintiff must establish four elements for a prima facie claim of retaliation:

> (1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal

12

connection existed between the protected activity and the materially adverse action.

*Hubbell v. Fedex Smartpost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (citations and internal quotations omitted).  In this case, the key question is whether "there was a causal connection between the protected activity and the adverse employment action or harassment." *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000) (emphasis omitted). In order to demonstrate a causal connection, "the evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001).

For purposes of satisfying the causal connection prong under the ELCRA, a plaintiff must demonstrate more than a mere causal link between his protected activity and the adverse employment action. To state an ELCRA retaliation claim, a plaintiff must demonstrate that his protected activity was a "significant factor" in his discharge. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989); *Barrett v. Kirtland Comm. College*, 245 Mich. App. 306, 215 (2005). As the Sixth Circuit has noted, "[a] factor can be a cause without being significant. Only the latter is sufficient to show retaliatory discharge." *Booker*, 879 F.2d at 1313.

## IV.   ANALYSIS

### A.   Defendant's Motion for Summary Judgment

13

*1.    Religious Discrimination*

Plaintiff claims that there is direct evidence of religious discrimination because:
(1) Defendant stated that Plaintiff's "identified reasons for the [tax] exemption include
him being a 'nonresident alien' and that he is neither a 'citizen' nor a 'resident'
because of his alleged status as a "Moorish American National," ECF No. 32, Ex. U;
(2) in its brief in support of its motion for summary judgment, Defendant stated that
"Plaintiff's demands were completely devoid of any religious connotation until the
May 30, 2017 investigative meeting [where] Plaintiff merely indicated he obtained the
false documents from his temple and offered to refer Defendant to his place of
worship,"  ECF No. 31, at 16, n. 3; and (3) the decision maker (Grigorian) labeled
Plaintiff's request as "Bizarre" shows her disdain to Plaintiff's faith, citing ECF No.
36, Ex. F.  Plaintiff contends that Grigorian's testimony that "Falsification to me
does not go in line with faith. The fact is you are either an American citizen or you're
not. I don't know how to [sic] your faith can change your status as a citizen. You are
either an American citizen or you are not…" especially evidences the discriminatory
intent. ECF No. 36, Ex. T at 73-74.

The Court is not persuaded that there is any direct evidence of religious
discrimination.  First, the fact that Defendant's employees indicated that Plaintiff was

a "Moorish American National" does not indisputably refer to Plaintiff's religion.[1]

Even accepting that MSTA constitutes a bona fide religion, *see Johnson-Bey v. Lane*,

863 F.2d 1308, 1309 (7th Cir. 1988) (recognizing Moorish Temple as a "bona fide

religion"), referring to Plaintiff as a "Moorish American National," at best, requires

an <u>inference</u> that Defendant's agents were basing the decision on Plaintiff's religion.

As noted above, however, direct evidence does not require an inference. *Tepper*, 505

F.3d at 515.

Second, the fact that Plaintiff stated that he got documents from his temple and

offered to refer Defendant to his place of worship regarding the documents does not

constitute direct evidence of religious discrimination.  Simple or fleeting references

to a place of worship do not dictate an understanding that a request is of a religious

nature. *See, e.g., Wessling v. Kroger Co.*, 554 F.Supp. 548, 550-51 (E.D. Mich. 1982).

Third, even if Plaintiff's comments established that he was making a religious

request, the fact that he was terminated the same day constitutes only indirect or

circumstantial evidence of religious discrimination, not direct evidence.  Fourth,

---

[1]In fact, Plaintiff's religion was/is Islam, the same religion he adhered to when he was hired a year earlier. *See* ECF No. 32, PgID 943 ("At the time of hire, Plaintiff was a member of the Islamic faith, and in approximately April 2017, he became a member of the Moorish Temple denomination."). There is no evidence or even allegation that any of Defendant's agents mentioned Islam or noted that Plaintiff was a Muslim in conjunction with his termination.

Grigorian's reference to Plaintiff's request to stop withholding his income taxes as "bizarre" does not, in itself, establish or even indicate that the request was religious, nor do her comments that "faith" has no bearing on citizenship. At a minimum, such comments require an inference that Grigorian had any discriminatory intent against Plaintiff on the basis of his religion.

For the reasons set forth above, the Court concludes that there is no direct evidence of religious discrimination.

As to indirect evidence of religious discrimination, it is undisputed that Plaintiff can show he was: (a) a member of a protected class [Islam/Moorish Science Temple of America], (b) experienced an adverse employment action [he was terminated], and (c) qualified for the position [he worked as a customer service representative for a year, with no indication he did not satisfy the criteria to perform the position]. The Court finds that Plaintiff cannot establish a prima facie case, however, because he has not offered evidence that could satisfy the fourth element.

First, Plaintiff has offered no evidence at all that he was replaced by a person outside of the protected class. Second, Plaintiff reliance on the deposition testimony of Roy Nesler, Defendant's Director of Employee Services, does not demonstrate that there were any persons similarly situated to Plaintiff that were treated differently. Nesler stated that: (1) other employees have claimed exemption from paying federal

income tax in the past; (2) Defendant is not liable if the IRS determines that the exemption does not apply to a particular employee; (3) this exemption does not impact the employee's ability to work; and (4) Defendant would not discipline an employee if it later found out that an employee did not have a valid claim for an exemption. ECF No. 32, Ex. P at 40-43.

As Defendant argues, Plaintiff's reliance on Nesler's testimony about employees who were not terminated for seeking a tax exemption is misleading. There is no evidence that Nesler had the knowledge or ability to provide comparator evidence; his role was to administer payroll, not discipline or investigate an employee's violation of company standards and policies, a duty solely within Employee Labor Relations department. ECF No. 37, Ex. D at 12-13; Ex. E. Plaintiff has not submitted to the Court any evidence (and Plaintiff did not question Nesler) about: (i) who sought the exemption; (ii) when was the exemption sought; (iii) why the exemption sought; (iv) the job title or description of the employee seeking the exemption; or (v) the religious beliefs of the employee, if the employee's religious beliefs were the basis for the exemption sought. ECF No. 37, Ex. D at 43.

For the reasons stated above, the Court finds that Plaintiff has not submitted evidence: (a) that he was replaced by someone outside his protected class; or (b) of any similarly situated employee(s) to whom Plaintiff's discipline (termination) can be

17

compared.   As such evidence constitutes a necessary element for a viable Title VII/ELCRA religious discrimination case by means of indirect evidence, *Tepper*, 505 F.3d at 13-14, the absence of that evidence is fatal to Plaintiff's religious discrimination claims.  The Court concludes that Plaintiff has not established a prima facie case of religious discrimination under Title VII or ELCRA, and Defendant's Motion for Summary Judgment is granted with respect to Counts I and IV.[2]

### 2.   National Origin Discrimination

Plaintiff has alleged that Defendant unlawfully harassed him because of his national origin and/or Defendant's perception of his national origin. Plaintiff claims his national origin as a Moor, pursuant to his membership in the MSTA. Plaintiff

---

[2]The Court notes that Plaintiff's own arguments undermine his claim that Defendant discriminated against Plaintiff because of his religion.  Plaintiff repeatedly testified and argued that his faith (religion) is "Islamic," whereas being Moorish is a nationality. *See, e.g.*, ECF No. 32, PgID 942 (emphasis added) ("It is undisputed that members of the Moorish Temple believe that African Americans are descendants of the Moabites and thus are **"Moorish" by nationality, and Islamic by faith.**"); Ex. A at 60 (Plaintiff's deposition testimony was that MSTA "teaches you that **you're Morrish [sic] by birth, Islamic by faith**.") (emphasis added); Ex. B (the MSTA is based "on the premise that African Americans are descendants of the Moabites and thus are **'Moorish' . . . by nationality, and Islamic by faith.**") (emphasis added).  The Court notes that Plaintiff's allegations and evidence are devoid of any indication that any of Defendant's employees ever mentioned Islam; rather, his action is based on Defendant's employees alleged conduct because Plaintiff is Moorish or a member of MSTA. ECF No. 36, PgID 1314. *See also* footnote 1, *supra* (Plaintiff's adherence to the Islamic faith did not commence in April 2017 when he became a member of the MSTA; he admits that he was Islamic at the time he was hired by Defendant in March 2016).

argues that: (a) Defendant perceived Plaintiff's national origin as Moorish American; (b) it is undisputed that Defendant believed Moorish American to be a national origin at the time of the investigation and termination, and (c) Defendant terminated Plaintiff's employment because it believed his Moorish American status to be false. Defendant asserts that Plaintiff's national origin claims must be dismissed because he cannot identify a country of origin or cultural characteristics that entitle him to protection under either Title VII or ELCRA.

It is undisputed that Plaintiff was born in the United States. Plaintiff's national origin claim therefore rests on his status as a Moor. ECF No. 31, Ex. C at 44 (Plaintiff testified that all that is required for membership is to simply declare yourself a Moor). Plaintiff has not identified a country from which the Moors originated, and he testified the Moors "originate from all over the world." *Id*. at 12, 54-55, 249-50. Plaintiff claims that the MSTA has a sovereign status similar to that of a federally recognized Native American Tribe. The Court finds that Plaintiff's argument lacks any binding legal support.

As Defendant argues, "Federal Courts have consistently held that national origin protection does not apply to native-born individuals . . . who claim to be affiliated with a tribal government purportedly existing independently of any federally recognized Indian Tribe." *Tum-Re El v. Keel*, 2016 U.S. Dist. LEXIS 68098, at *3

19

(N.D. Ohio May 24, 2016) (citing *Bey v. Oakton Comm. Coll.*, 2015 U.S. Dist. LEXIS 131877, at *5 (N.D. Ill. Sept. 30, 2015)). Courts of the Eastern District of Michigan and the Sixth Circuit have dismissed claims like Plaintiff's. *See, e.g., Grayson El Bey v. Art Van Furn.*, 2000 U.S. App. LEXIS 24876 (6th Cir. Sept. 19, 2000); *Tinnon v. United States*, 2016 U.S. Dist. LEXIS 68447 (E.D. Mich. July 5, 2016).

In *Grayson El Bey*, the plaintiff "notified Oakton of a correction in his name and national origin – 'Aboriginal-Indigenous Moor/Native American' – and, further, that it was against his 'Moorish/Islamic religious beliefs to have and use a SSN or to participate in any way in a social security program." *Grayson El Bey*, 2015 U.S. Dist. LEXIS 131877, at **3-5. Oakton ultimately refused to change Bey's name or withdraw his social security number. *Id*. at *5. Bey filed suit claiming "Oakton unlawfully discriminated against him based upon his national origin by failing to correctly refer to his name and national origin and by terminating him[.]" *Id*. at *7. The court dismissed Bey's claims upon finding that he failed to demonstrate membership in a protected class. *Id*. at **12, 15. The Court concluded that "[t]he term 'national origin' refers to the country where a person was born, or more broadly, the country from which his ancestors came." *Id*. at *15. The court continued, "[t]here is no legal authority of which the Court is aware (and the plaintiffs provide none) for national-origin protection being given to a native-born individual who is neither

20

Native American (understood to mean a member of a recognized American Indian tribe) nor of foreign ancestry." *Id*.  That court also recognized that Bey failed to "allege[] any facts suggesting that he has physical, cultural, or linguistic characteristics that identify him as being a particular national origin, thus calling for the protection afforded anti-discrimination statutes." *Id*.

Driessche testified that she understood "Moorish American was similar to African American, Japanese American, Asian American." ECF No. 36, Ex. O at 82. Plaintiff contends that "[n]ational origin discrimination involves treating people (applicants or employees) unfavorably because they are from a particular country or part of the world, because of ethnicity or accent, or because they appear to be of a certain ethnic background (even if they are not)." EEOC National Origin Discrimination, https://www.eeoc.gov/laws/types/nationalorigin.cfm. Plaintiff claims that the MSTA has a sovereign status similar to that of a federally recognized Native American Tribe, but the Court finds that he has offered no evidence or legal authority supporting his claim that the MSTA is a federally recognized tribe or organization. *Id*. at 249-50.  Nor has Plaintiff come forward with any "physical, cultural, or linguistic characteristics that identify him as being a particular national origin." *Bey*, 2015 U.S. Dist. LEXIS 131877, at *15.

 For the reasons set forth by Defendant, namely that Plaintiff was born in the

21

United States and is not a member of a tribe recognized by the federal government, the Court grants Defendant's motion with respect to, and dismisses, Plaintiff's Title VII claim (Count II) for national origin discrimination. As claims under the ELCRA involve the same analysis as Title VII claims, *see, e.g., Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, fn. 4 (6th Cir. 2004), the Court dismisses Plaintiff's ECLRA claim of national origin discrimination (Count V) for the same reasons.

### 3. Retaliation

Plaintiff claims Defendant terminated him in retaliation for seeking "an exemption from US Tax withholding based on his honestly held religious belief." Complaint, Dkt. No. 1 at ¶68; *see also* ¶¶69, 95 and 96.

Defendant argues that Plaintiff cannot demonstrate: (a) a causal link between his protected activity and his termination; or (b) that Plaintiff's protected activity was a significant factor in Defendant's decision to terminate his employment. Upon receiving Plaintiff's request for exemption from federal income tax withholding, Defendant claims that it provided Plaintiff with instructions how to claim the exemption. ECF No. 31, Ex. D (April 27, 2017 Email from Nesler to Plaintiff). Defendant also provided these instructions to Plaintiff two additional times. *Id*. (May 13, 2017 Email, May 20, 2017 Email). On May 25, 2017, Plaintiff followed the instructions and filed the claimed exemption. ECF No. 31, Ex. H.

22

Defendant states that it was not until Plaintiff provided an affidavit in the form of the W-8, wherein Plaintiff claimed was not a United States citizen, that Defendant began investigating his changed citizenship status.  Grigorian and Driessche testified that their investigation focused solely on Plaintiff's citizenship claims. ECF No. 31, Ex. N at 62 and Ex. O at 75.  Grigorian testified that Defendant would not have terminated Plaintiff's employment had Plaintiff not provided false and/or misleading information relative to his citizenship. ECF No 31, Ex. N at 80.  For these reasons, Defendant contends that there is no evidence of a causal connection between Plaintiff's tax exemption claims and his termination.

Plaintiff contends that Defendant's absence of causal link argument is flawed for several reasons.  First, Defendant received the affidavit (the W-4T form) stating Plaintiff was not a U.S. citizen on May 1, 2017, but Driessche did not request to meet with Plaintiff until May 25, 2017, the same day that Plaintiff claimed the exemption, and Driessche requested the investigative meeting by responding to the email correspondence concerning the instructions for claiming the tax exemption. .ECF No. 31, at 5 and Ex. G. Plaintiff believes that, despite Defendant's assertion that Plaintiff was not terminated because of his requested tax exemption, this "direct" evidence and temporal proximity clearly shows unlawful retaliation. Citing *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) ("[I]f there is a very close temporal proximity, then no

other evidence is needed.").

Second, Plaintiff argues that he made clear the religious nexus of his request. Plaintiff relies on the facts that: (a) he communicated to Bodiford on April 25, 2017 that he recently converted to MSTA, wanted to withdraw the use of his Social Security number because he is not subject to U.S. taxes, and had received the documentation from his religious leaders; and (b) he told Driessche during the investigative meeting that he received the documents from the "Moorish Temple;" and (c) Plaintiff emailed Driessche after the meeting, directing her to his "place of worship" if Defendant had any further questions concerning his request. ECF No. 36, Ex. P and Ex. Q.  For these reasons, Plaintiff believes it is undisputed that Defendant terminated Plaintiff because of his religious request, as referenced in the termination report. ECF No. 36, Ex. U.

In viewing the evidence in a light most favorable to Plaintiff for purposes of Defendant's Motion for Summary Judgment, the Court finds that Plaintiff has submitted sufficient evidence to establish a prima facie case of retaliation.  There is evidence that he engaged in a protected activity when he sought a tax exemption based on his membership in the MSTA and that he communicated to Defendant (at least to Bodiford and Driessche) that he was seeking the tax exemption based on that membership.  It is undisputed that Defendant took materially adverse action against Plaintiff when Defendant terminated him.

The Court also finds that Plaintiff has offered evidence that, and a genuine dispute of material dispute exists whether, Defendant terminated him for engaging in protected activity.   Specifically, in a period of less than six weeks, the following events occurred:

a.   Plaintiff communicated to Bodiford on April 25, 2017 that he recently converted to MSTA, wanted to withdraw the use of his Social Security number because he is not subject to U.S. taxes, and had received the documentation from his religious leaders.   The fact that Bodiford disputes that Plaintiff did so, ECF No. 32, Ex. G at 48-50, does not negate Plaintiff's evidence.

b.   Driessche initiated questioning Plaintiff about his exemption the same day that Plaintiff filed his documents in support of his exemption (and set up an investigative meeting about it several days later).

c.   Plaintiff told Defendant during the investigative meeting that he received the documents from the "Moorish Temple" and identified himself as "Moorish American."

d.   After the investigative meeting, Plaintiff emailed Driessche, directing her to his "place of worship" if Defendant had any further questions concerning his request, which Defendant admitted. *See* ECF No. 4 at ¶ 41 ("BCBSM admits that Plaintiff directed BCBSM to his place of worship for additional information.").

e.   Defendant admits that "Plaintiff expressed his view that he was exempt from paying federal taxes because of his membership in the Moorish American **Church**." ECF No. 32, Ex. X (Answer to Interrogatory No. 8) (emphasis added).

f.   The termination report indicates that Plaintiff claimed he is exempt from paying taxes because of his alleged status as a "Moorish American National."

g.   Nesler stated at his deposition that: (1) other employees have claimed exemption from paying federal income tax in the past; (2) Defendant is not liable if the IRS determines that the exemption does not apply to a particular employee; (3) this exemption does not impact the employee's ability to work; and (4) Defendant would not discipline an employee if it later found out that an employee did not have a valid claim for an exemption. ECF No. 32, Ex. P at 40-43.

Defendant disagrees with the accuracy of some of those items (such as whether Plaintiff communicated any religious basis – as opposed to a national origin basis – in conjunction with his request for tax exemption) or the value of some of those items (such as Nesler's knowledge of the reasons employees are or are not disciplined or terminated).   Defendant also argues that it provided Plaintiff with the necessary materials to apply for tax exemption, as Plaintiff requested, not once but three times.

When all of that evidence is viewed a light most favorable to Plaintiff, the temporal proximity of his requests that may have been religious in nature to the time of his termination dictates that the Court conclude that Plaintiff has provided evidence that could establish that his protected activity was the likely reason for – or even a significant factor in  – Defendant's decision to terminate Plaintiff.

The Court finds that Defendant's stated basis for terminating Plaintiff (that Plaintiff provided the company with false and/or misleading affidavit indicating that Plaintiff was not a U.S. citizen) is a legitimate, non-discriminatory reason.  Defendant states that Plaintiff cannot demonstrate that its proffered reason for termination was

26

pretextual because Plaintiff provided Defendant with false and/or misleading information. Citing *Pierce v. GM LLC*, 716 F. App'x 515, 517-18 (6th Cir. 2017) (dismissing plaintiff's retaliation claims when the record demonstrated plaintiff failed to comply with company policies); *Shabazz*, 2011 U.S. Dist. LEXIS 103774 at **13, 25 (the plaintiff's suit alleging employment discrimination due to her race and/or religious beliefs was dismissed because "[i]n large measure . . . [d]efendant's legitimate, non-discriminatory reasons for terminating Plaintiff [we]re corroborated by [p]laintiff's own testimony.").

In *Shabazz*, the court held that the plaintiff failed to provide any evidence that defendant's proffered reason for termination "lacked a basis in fact, did not actually motivate the decision, or were never used before to terminate an employee." Id. at *27. Defendant suggests that, because Plaintiff's affidavit and W-4T contained false and/or misleading information (that Plaintiff was not a U.S. citizen), his statements to Defendant and at his deposition that he was a U.S. citizen (in addition to a Moorish American National) corroborated Defendant's termination of Plaintiff's employment.

Plaintiff argues, and the Court agrees, that Defendant's inconsistent explanations for Plaintiff's termination are enough to show that Defendant's proffered reason was pretextual. *See Adimulam v. Henry Ford*, 2018 WL 3956353, at *9 (E.D. Mich. Aug. 17, 2018). Defendant's termination report states Plaintiff was

27

uncooperative, but Driessche stated at her deposition that Plaintiff was cooperative, demonstrating pretext. The Court also notes that Driessche verified that when Plaintiff submitted the documents on May 25, 2017, they were not false or misleading. Driessche's (and Grigorian's) conclusion that Plaintiff's responses at the investigative meeting were misleading or false is not the only conclusion possible. At that meeting, Plaintiff did not say, I am not a U.S. citizen; rather, the evidence is that Plaintiff could not explain certain information about his tax exemption claim.  Those responses are consistent with what one of Defendant's employees testified could be expected of a normal, non-accountant citizen.  As noted above, Nesler testified that laymen do not understand their tax forms and even he does not understand everything about his tax forms.[3]  As such, Plaintiff's statements in the documents seeking tax-exemption and his responses to Driessche that he did not know the answer to the question may not have been false and misleading so much as they might have shown Plaintiff's confusion.  Finally, as Plaintiff argues, Defendant could have simply denied Plaintiff's request as ineligible for tax exemption rather than terminating him, especially as

_____

[3]Nesler stated that lay people do not understand everything in their tax forms and further testified that he himself, as Director of Employee Services, does not read every word in his tax documents, and if someone were to ask him to explain any deductions he claimed, he would have to refer that individual over to his accountant for an explanation. ECF No. 36, PgID 1310 n.7 (citing ECF No. 32, Ex. P at 75-76).

Plaintiff did not affirmatively state that he was or was not a U.S. citizen when repeatedly responding to Driessche that he did not know the legal jargon. For these reasons, the Court finds that Plaintiff has offered evidence that Defendant's proffered reason was pretextual.

For the reasons stated above, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims.

**B.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff contends that he has presented direct evidence that he was terminated because he requested a religious accommodation. Specifically, Plaintiff relies on the fact that, in support of his request for federal income tax exemption, he submitted documents to Defendant (Grigorian) via email on April 25, 2017 that included the following statement: "The affiant is neither a 'citizen' nor a 'resident' within the meaning of the Internal Revenue Code, because of his/her declared status as a 'Moorish American National', Continental United States." ECF No. 32, PgID 955 and Ex. H at 4. Viewed in a light most favorable to Defendant (as the Court must on Plaintiff's Motion for Partial Summary Judgment), however, "Moorish American National" does not indicate any religious basis for Plaintiff's request. "Moorish American National" – without any reference to Islam, the MSTA, or the Moorish Science Temple of America – could just as easily, and more likely, indicate nationality

or national origin, not faith. As discussed above, Plaintiff's statements and the exhibits in support of his Motion for Partial Summary Judgment make exactly that distinction - that he is Moorish by nationality and Islamic by faith.

Plaintiff also cites his comments at the investigative meeting conducted by Driessche on May 30, 2017, at which he stated that he received the documents from the "Moorish Temple," identified himself as "Moorish American," and directed Driessche to his "place of worship." ECF No. 32, Ex. U, Ex. V. For these reasons, Plaintiff asserts that "[i]t could not have been clearer or more obvious that Plaintiff was requesting a religious accommodation." The Court also notes that Defendant's interrogatory answers showed that Defendant was aware that "Plaintiff expressed his view that he was exempt from paying federal taxes because of his membership in the Moorish American Church." ECF No. 32, Ex. X (Answer to Interrogatory No. 8). Plaintiff argues that Driessche, the decision-maker, explicitly referenced Plaintiff's religious accommodation request in the termination report when writing that: "His [Plaintiff's] identified reasons for the exemption include him being a 'nonresident alien' and that he is neither a 'citizen' nor a 'resident' because of his alleged status as a 'Moorish American National'." Ex. Y.

Viewing all of that evidence in a light most favorable to Defendant (for purposes of Plaintiff's Motion for Partial Summary Judgment), the Court finds that

there is a genuine dispute of material fact regarding the basis for Plaintiff's termination.    The statement in the termination report regarding Plaintiff's identification: (a) makes no reference to Plaintiff's religion, as "Moorish American National" does not unequivocally connote a religion – as set forth above, it may even only refer to nationality, not faith; and (b) reflects only what Plaintiff stated to Driessche, not Driescsche's or Defendant's perspective of that statement.    The termination report does not otherwise directly or indirectly mention religion, Islam, the MSTA, or Moorish Science Temple of America.  And, there is no evidence that any Defendant employee indicated that Plaintiff was terminated because of his Islamic faith or membership in the MSTA.

Plaintiff's Motion for Partial Summary Judgment is denied.

## V.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 31] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [ECF No. 32] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Title VII and ELCRA claims based on religious discrimination and national origin discrimination (Counts I-II, IV-

V) are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Title VII and ELCRA retaliation claims (Counts III and VI) remain.

IT IS ORDERED.

s/Denise Page Hood

DENISE PAGE HOOD

Dated: May 2, 2023                                    UNITED STATES DISTRICT JUDGE

32